IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ELIZABETH MUNDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV496 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Elizabeth Mundy, brought this action pursuant to Section 205(g) of

the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review

of a final decision of the Commissioner of Social Security denying her Disability

Insurance Benefits ("DIB") and a Period of Disability ("POD") under Title II of the

Act. The Court has before it the certified administrative record and cross-motions for

judgment.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a POD and DIB in July of 2012

alleging a disability onset date of April 9, 2011.[1] (Tr. 184, 147-150.) Her claims were

denied initially and again upon reconsideration. (*Id.* at 72-80, 82-89.) Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 94-101.) At

---

[1] Transcript citations refer to the administrative record filed manually with the
Commissioner's Answer. (Docket Entry 6.)

the December 5, 2013 hearing, were Plaintiff, her counsel, and a vocational expert ("VE"). (*Id.* at 27-44.) On February 25, 2014, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled under the Act. (*Id.* at 15-22.) On April 24, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-7, 10-11.) Plaintiff then initiated this action.

## II. <u>STANDARD OF REVIEW</u>

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir.

2

1979)). The Court does not conduct a *de novo* review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345.

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not if Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## III. THE ALJ'S DISCUSSION

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

3

(1)     Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working).   If so, the claimant is not disabled and the inquiry ends.

(2)     Whether the claimant has a severe impairment.   If not, then the claimant is not disabled and the inquiry ends.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work.   If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity ("RFC") and her vocational abilities.   If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

In rendering his disability determination, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016. . . .

2.  The claimant has not engaged in substantial gainful activity since April 9, 2011, the alleged onset date . . . .

3.  The claimant has the following severe impairments: degenerative disc disease of the cervical spine and

4

degenerative joint disease shoulders . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except that she is to have the option to alternate between sitting and standing at least every hour; and she is to avoid more than frequent stooping, climbing, or overhead reaching with the bilateral upper extremities. . . .

6. The claimant is unable to perform any of her past relevant work . . . .

7. The claimant was born on April 28, 1963 and was 47 years old, which is defined as a younger individual aged 19-49, on the alleged onset date. The claimant's age category subsequently changed to that of an individual closely approaching advanced age . . . .

8. The claimant has at least a high school education, and she is able to communicate in English . . . .

9. Transferability of job skills is not material to the determination of disability, because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills . . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform . . . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 9, 2011 through the date of this decision . . . .

(Tr. 17-22.)

5

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that she was not disabled. (Docket Entry 11). Specifically, Plaintiff raises two objections. First, she contends that the ALJ erred by giving little weight to the opinion of Dr. Arcedo Perico, her treating physician. (*Id.* at 11 at 4-10.) Second, she argues that the ALJ failed to properly explain the weight assigned to the medical opinion of consulting physician Dr. Janakiram Setty, M.D. (*Id.* at 11-13.) For the following reasons, the Court concludes that while Plaintiff's first objection is without merit, her second objection has substance and that remand is therefore proper.

### A. The ALJ's Decision to Give "Little Weight" to the Medical Opinion of Dr. Perico Is Supported by Substantial Evidence.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. § 404.1527(c)(2)(ii).

As subsections (2) through (4) of the rule describe in detail, a treating source's

6

opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Plaintiff contends that the ALJ committed reversible error in failing to "properly explain the reasons for the weight assigned to the medical opinion of [her] treating physician," Dr. Arcedo Perico. (Docket Entry 11 at 4.) Plaintiff visited Dr. Perico between May and November of 2013 for neck and lower back pain. (*Id.* at 346, 358, 361, 373.) Dr. Perico performed a Physical Capacities Evaluation on October 22, 2013, which involved circling a number a limitations followed by a short explanation in support of these proposed limitations. (*Id.* at 354-56.) The limitations circled by Dr. Perico indicated Plaintiff could only occasionally lift and carry up to five pounds. (*Id.* at 355.) He concluded further that Plaintiff could never bend, squat, crawl, climb, or reach above shoulder level. (*Id.*) Dr. Perico also indicated that Plaintiff would be unable to stand or walk without interruption for, respectively, ten and fifteen minutes and even then Plaintiff could only stand for thirty minutes per day total and walk forty-five minutes per day total. (*Id.* at 354.) Dr. Perico further concluded that Plaintiff could only sit for one hour a day without interruption and could only sit for a total of four hours per day. (*Id.*) Dr. Perico cited the results of Plaintiff's MRI and her status post-spinal fusion, as objective evidence on which his opinion was based. (*Id.* at 356.)

7

The ALJ afforded "little weight" to Dr. Perico's medical opinion. (Tr. 18, 20.) In support, the ALJ pointed out that Dr. Perico's opinion "was offered without any analysis or rationale, and . . . was inconsistent with Dr. Perico's own treatment notes, with X-rays and MRI, and with the weight of the medical evidence." (*Id.* at 20.) The ALJ's decision to give Dr. Perico's opinion little weight is supported by substantial evidence for a number of reasons.

First, the limitations Dr. Perico circled[2] are inconsistent with his own progress notes. Specifically, Dr. Perico's progress notes indicate that Plaintiff exhibited abnormal sensation in her right arm and tenderness in the right cervical paraspinal muscles, with normal gait and sensation, and decreased reflexes in the upper extremity. (*Id.* at 18, 330, 347, 349, 359, 362.) Dr. Perico prescribed opioid medications and a transcutaneous electronic nerve stimulator, and in November of 2013, Plaintiff reported that her pain was "tolerable" with medication management, and she rated it as 4.5/10. (*Id.* at 18, 346-350, 358-363, 374, 377-379.) These notes, therefore, are inconsistent with the more extreme limitations circled by Dr. Perico in his Physical Capacities Evaluation on October 22, 2013.

Second, Dr. Perico's proposed limitations are inconsistent with the remainder of the record. For example, the ALJ correctly pointed out that (1) other than a slight

---

[2] Pre-printed forms that require little in the way of explanation are generally not looked upon favorably. *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

8

deficit of reflexes and some right arm weakness, due to pain, Plaintiff's examinations were essentially normal, (2) her X-rays and MRI revealed a solid post-surgical[3] fusion, without residual neurological impingement, and (3) Plaintiff's physical therapist concluded that her complaints were out of proportion with the medical findings. (*Id.* at 20, 252-53; 254-55; 256-57; 287; 290; 312; 332; 346-350, 358-363, 374.)

Moreover, Dr. Perico's conclusory limitations were inconsistent with the opinion of a consulting physician, Dr. Janakiram Setty, that Plaintiff could stand/walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; and lift ten pounds occasionally and frequently; all without an assistive device. (*Id.* at 304). Likewise, Dr. Perico's opinion was also inconsistent with the opinion of Dr. A. K. Goel, a non-examining state agency physician. (*Id.* at 62-64.) Dr. Goel reviewed the available medical evidence, including Dr. Setty's opinion, and concluded that Plaintiff was capable of light exertional work, including lifting twenty pounds occasionally, ten pounds frequently, and standing/walking for about six hours in an eight-hour day. (*Id.*) The opinions of Drs. Setty and Goel, both of which were discussed by the ALJ, are inconsistent with the limitations proposed by Dr. Perico.[4] (*Id.* at 20-21.) The ALJ did not err in his evaluation of Dr. Perico's medical opinion.

---

[3] Dr. Thomas Dimming performed a two-level anterior cervical discectomy and fusion on Plaintiff in June of 2011. (Tr. 256-57.)

[4] Though the medical opinions of Drs. Setty and Goel are at odds regarding whether Plaintiff can lift more than ten pounds, neither opinion supports a conclusion that Plaintiff can lift no more than five pounds.

9

**B. The ALJ's Evaluation of Dr. Setty's Opinion Is Not Susceptible to Judicial Review.**

Plaintiff next contends that the ALJ failed to properly explain the weight attributed to Dr. Setty's medical opinion. (Docket Entry 11 at 11.) The ALJ must evaluate consultative opinions like Dr. Setty's using the factors outlined above in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. *See* 20 C.F.R. §§ 404.1527(c); Social Security Ruling ("SSR") 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."); *see also Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence").

As noted, Dr. Setty concluded that Plaintiff could stand/walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; and lift ten pounds occasionally and frequently. (Tr. 304.) The ALJ gave this opinion "greater weight" than Dr. Perico's yet, the ALJ's RFC determination also concluded that Plaintiff could perform light work. (*Id.* at 19, 21.) Light work, in pertinent part, is defined as lifting no more than twenty pounds at a time with frequently lifting or carrying up to ten pounds. 20 C.F.R. § 404.1567(b). Plaintiff thus faults the ALJ for failing to explain his conclusion that she is capable of lifting twenty pounds, after giving "greater weight" to Dr. Setty's conclusion she can only lift ten pounds. (Docket Entry 11 at 11.)

10

Assessment of this argument requires closer scrutiny of the ALJ's decision, which reads as follows:

> The undersigned has given greater weight to the assessment of Dr. Setty, the consultative examiner, who opined that claimant was capable of a limited range of light work, due to tenderness, loss of muscle mass, and decreased range of motion in the shoulder. The undersigned finds that Dr. Setty's opinion was supported by detailed objective findings and that it was more consistent with the weight of the medical evidence.

> Non-examining State agency consultants assessed the record and opined that the claimant was capable of performing a wide range of light to medium work, with limitations of her overhead reaching (Exhibits 2A and 4A). The undersigned has given considerable weight to the more restrictive of these assessments,[5] which was consistent with the opinion of Dr. Setty and with the overall medical evidence.

(Tr. 21.)

As noted, the ALJ gave "greater weight" to Dr. Setty's opinion that Plaintiff could lift no more than ten pounds and gave "considerable weight" to Dr. Goel's opinion that Plaintiff could lift twenty pounds. This is troubling because the Court must speculate as whether the failure to address this inconsistency was an oversight by the ALJ, or a tacit rejection of Dr. Setty's lifting limitation.

What is more troubling is that there are significant reasons to conclude that the ALJ's failure to address Dr. Setty's ten pound lifting limitation was an oversight and

---

[5] Dr. Goel's assessment is the "more restrictive" of the two non-examining physician assessments and so is the assessment referred to above by the ALJ. (Tr. 51-53, 62-64.)

11

that, consequently, the ALJ never actually considered the lifting limitation in Dr. Setty's opinion. First, in his decision, the ALJ refers to Dr. Setty as restricting Plaintiff to a "limited range of light work." (*Id.* at 18, 21.) But Dr. Setty found that Plaintiff could only lift a maximum of ten pounds, which is consistent with sedentary, not light, work. *Compare* 20 C.F.R. § 404.1567(a) ("[s]edentary work involves lifting no more than 10 pounds at a time") *with id.* § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequently lifting or carrying of objects weighing up to 10 pounds."). The ALJ thus appears to have been under the impression that Dr. Setty limited Plaintiff to light work (*i.e.*, lifting twenty pounds), which is not the case.

Second, the ALJ also "finds that Dr. Setty's opinion was supported by detailed objective findings and that it was more consistent with the weight of the medical evidence." (Tr. 21.) The logical inference here, then, is that the ALJ found Dr. Setty's ten pound lifting limitation to be "supported by detailed objective findings" and to be "consistent with the weight of the medical evidence." Yet, if so, this conclusion is at odds with the ALJ's RFC finding that Plaintiff can perform a limited range of light work. An explanation from the ALJ, rather than silence, is therefore in order.

Third, the ALJ concludes that Dr. Goel's assessment was "consistent with the opinion of Dr. Setty and with the overall medical evidence." (*Id.* at 21.) But this is not so. As explained, the two doctors disagreed on a fundamental issue: whether Plaintiff could lift twenty pounds. This matters, because the hypothetical presented to the VE, and ultimately accepted by the ALJ, presumed that Plaintiff could lift twenty

12

pounds. (*Id.* at 41-43.) However, the VE also acknowledged that a claimant that could not lift twenty pounds occasionally would be limited to sedentary work, and all the jobs identified by the ALJ at step five required the performance of light work. (*Id.* at 22, 43.) Consequently, the ALJ's failure to draw a logical bridge between his RFC finding restricting Plaintiff to light work and the medical opinions of Drs. Setty and Goel prevents this Court from engaging in substantial evidence review on a matter central to this case.[6]

The Commissioner, on the other hand, contends that none of this is problematic. She accurately points out that, "Dr. Goel rejected Dr. Setty's work-related limitations as 'too restrictive.'" (Docket Entry 13 at 11 *quoting* Tr. 64.) In

---

[6] *See* SSR 96-8p, 1996 WL 374184, at *7 ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."); *see also Guajardo v. Astrue*, No. 1:08CV01071 GSA, 2009 WL 2230851, at *9 (E.D. Cal. July 24, 2009) ("Because the ALJ mistakenly believed [the consulting examiner] and the nonexamining consultive physicians agreed with regard to Plaintiff's ability to walk and stand for a period of six hours in an eight-hour workday, and because the Court concludes that error [of basing a disability decision on a mistaken premise] was not harmless, substantial evidence does not support the Commissioner's decision that Guajardo is not disabled."); *Williams v. Colvin*, No. 3:13CV701-RLV, 2015 WL 9094803, at *12 (W.D.N.C. Dec. 16, 2015); *Scruggs v. Colvin*, No. 3:14–cv–00466, 2015 WL 2250890, *3 (W.D.N.C. May 13, 2015) ("[I]mportantly, however, the ALJ—as opposed to the state agency medical consultants—is tasked with performing a function-by-function assessment of a claimant's RFC" and "is solely responsible for determining the RFC of a claimant") (citations omitted); *Garner v. Colvin*, No. 1:12CV1280, 2015 WL 710781, at *7 (M.D.N.C. Feb. 18, 2015) ("Defendant argues that all three IQ tests were considered by the state agency consultants and therefore the ALJ's failure to weigh the tests explicitly was harmless. This argument misunderstands the role of the state agency consultants. The ALJ is required to balance conflicting evidence and make a determination of disability, not the consultants. In doing so, the ALJ is required to discuss relevant evidence that weighs against his decision. The ALJ did not do this here. Consequently, the undersigned cannot determine whether the ALJ's decision was supported by substantial evidence because it is impossible to tell what weight, if any, was given to the April 2005 and November 2009 IQ tests.") (citations omitted).

13

further support, the Commissioner also correctly points out that "Dr. Goel wrote that Plaintiff retained full strength and sensation, and that a 2011 MRI of her cervical spine and an x-ray shoulder were negative." (*Id. citing* Tr. 64, 254-255.) The Commissioner accurately notes further that "Dr. Goel saw 'no indication' in the evidence that Plaintiff could not lift more than 10 pounds." (*Id. quoting* Tr. 64.) The Commissioner concludes from this that "Dr. Setty's opinion was considered and discounted by the state agency physician who found Plaintiff capable of light work, and the ALJ afforded considerable weight to the state agency opinion." (*Id. citing* Tr. 21.)

While the Government's argument is not a frivolous one, the Court is ultimately unpersuaded that the ALJ meaningfully reconciled in the first instance conflicting evidence regarding Plaintiff's exertional limitations in lifting and carrying. This is because the Commissioner's interpretation begs the question of whether the ALJ was even cognizant of the discrepancy between the opinions of Drs. Setty and Goel discussed above. The Commissioner's interpretation further ignores the reasons articulated above suggesting that the ALJ never actually considered in his review of the record Dr. Setty's ten pound lifting limitation. (Tr. 303.)

The Commissioner's reading of the ALJ's Decision also requires the Court to conclude that the ALJ incorporated into that Decision, silently and without explanation, Dr. Goel's rejection of Dr. Setty's opinion, even though the ALJ also erroneously concluded that the two opinions were consistent. Given that the ALJ wrongly concluded that the two opinions were consistent, there is little reason to

14

believe that the ALJ ever reached the point of favoring one over the other regarding Plaintiff's ability to lift more than ten pounds. In short, the ALJ appears to have rendered his disability decision based on a mistaken premise. As explained earlier, it is not the province of the Court to review the evidence de novo, reconcile conflicting evidence left unaddressed by the ALJ, or find facts in the first instance. That is the duty of the ALJ and because it is not clear whether the ALJ meaningfully discharged this duty here, remand is proper.

Put differently, the ALJ in this case had a duty to consider "all the evidence and explain on the record the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim. Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980) (citation omitted). The ALJ's duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir. 1999). Here, the ALJ failed to provide sufficient explanation to support his RFC assessment and the Court simply "cannot tell whether [his] decision is based on substantial evidence." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

None of this necessarily means that Plaintiff is disabled under the Act and the Court expresses no opinion on that matter. Nevertheless, the Court concludes that the proper course here is to remand this matter for further administrative proceedings.

15

## V.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g).   The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above.   To this extent, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **DENIED.**

_____

Joe L. Webster
United States Magistrate Judge

August 24, 2016

16